IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DEBORAH D. TYLER & Husband, )
ROBERT TYLER, )
 ) CV NO. 5:12-cv-909-DAE
  Plaintiffs, )
 )
v. )
 )
BANK OF AMERICA, N.A., & )
DEUTSCHE BANK NATIONAL )
TRUST COMPANY, AS TRUSTEE )
FOR THE CERTIFICATEHOLDERS )
OF THE MORGAN STANLEY ABS )
CAPITAL I INC. TRUST 2004-NC5, )
MORTGAGE PASS-THROUGH )
CERTIFICATES, SERIES 2004, )
 )
  Defendants. )
_____ )

ORDER: (1) DENYING PLAINTIFFS' MOTION FOR NEW TRIAL;
(2) DENYING DEFENDANTS' MOTION FOR SANCTIONS

   Before the Court is a Motion for New Trial and Rehearing filed by

Plaintiffs Deborah D. Tyler and Robert Tyler (collectively, "Plaintiffs"). (Dkt.

# 33.) Defendants Bank of America, N.A. ("Bank of America") and Deutsche

Bank National Trust Company ("Deutsche Bank") (collectively, "Defendants")

filed a Motion for Sanctions. (Dkt. # 37.) The Court heard argument regarding

Plaintiffs' Motion for New Trial and Defendants' Motion for Sanctions on October

1

21, 2013.  Kenneth E. Grubbs, Esq., and Christopher Deeves, Esq., appeared at the

hearing on behalf of Plaintiffs; Nathan T. Anderson, Esq., appeared at the hearing

on behalf of Defendants.  After reviewing the Motions and the supporting and

opposing memoranda, the Court **DENIES** both Plaintiffs' Motion for New Trial

and Defendants' Motion for Sanctions.

BACKGROUND

I.    <u>Factual History</u>

On February 20, 2004, Plaintiffs obtained two loans, one for $97,600

and one for $24,400, from New Century Mortgage Corporation ("New Century").

(Dkt. # 21 ("SAC") ¶ 4.)  The loan for $97,600 was secured by a mortgage on

property located at 606 Heritage Way, San Antonio, Texas 78245 ("the

Property").[1]  (Dkt. # 22, Ex. 1.)  Plaintiffs executed a promissory note ("the

Note").  (<u>Id.</u>)  The Note stated that Plaintiffs promised to pay New Century, "the

Lender," in return for the loan received, and provided that "anyone who takes this

Note by transfer and who is entitled to receive payment under this Note is called

the 'Note Holder.'"  (<u>Id.</u>)  Plaintiffs also executed a Deed of Trust ("the Deed of

---

[1]         The Second Amended Complaint did not allege which of the two
loans Defendants attempted to foreclose upon.  Indeed, Plaintiffs did not
specifically allege that Defendants attempted to foreclose on either.  However, in
their Motion to Dismiss, Defendants stated that "they do not purport to be the
assignee of the . . . deed of trust or note" relating to the loan for $24,400.  (Dkt.
# 22 at 3 n.4.)  Presumably, the $24,400 loan was not at issue in this case.

2

Trust").  (Dkt. # 22, Ex. 2.)  The Deed of Trust again identified New Century as the "Lender," and stated that:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [Property].

(Id. at 3.)

On June 26, 2012, Stephen Allen Johnson, an Assistant Vice President of Countrywide Home Loans, Inc. ("Countrywide"), under power of attorney for New Century, executed an Assignment of Deed of Trust, which purported to "grant, convey, assign, and transfer" the Deed of Trust from New Century to Deutsche Bank, as Trustee for the Certificate holders of the Morgan Stanley ABS Capital I Inc. Trust.  (Dkt. # 22, Ex. 3.)

According to Defendants, Plaintiffs failed to make timely mortgage payments, and a foreclosure was scheduled for September 4, 2012.  (Dkt. # 22 at 3-4.)

II.   Procedural History

On September 4, 2012, Plaintiffs filed a Complaint in state court. (Dkt. # 1, Ex. 1.)  On September 26, 2012, Defendants filed a Notice of Removal in this Court.  (Dkt. # 1.)  On October 3, 2012, Defendants filed a Motion to Dismiss Plaintiffs' Complaint.  (Dkt. # 4.)  On October 24, 2012, Plaintiffs

submitted a Motion to File an Amended Complaint (Dkt. # 9), which the Court

granted on October 25, 2012.  Plaintiffs' First Amended Complaint was filed that

same day.  (Dkt. # 10.)  On November 8, 2012, Defendants filed a Motion to

Dismiss Plaintiffs' First Amended Complaint.  (Dkt. # 15.)

On January 4, 2013, Plaintiffs again moved to file an amended

complaint (Dkt. # 19), which the Court granted on March 25, 2013.  That same

day, Plaintiffs filed a Second Amended Complaint.  (SAC.)  The Second Amended

Complaint asserted causes of action for: (1) violations of the Texas Uniform

Commercial Code ("UCC") (SAC ¶¶ 12–14); (2) quiet title (id. ¶ 15); (3)

violations of the Texas Civil Practice and Remedies Code § 12.002 (id. ¶ 16); and

(4) breach of contract (id. ¶ 18).  The Second Amended Complaint also asserted

that all Defendants and their agents "should be held liable for all acts or practices

committed" under the doctrine of respondeat superior.  (Id. ¶ 17.)  Finally,

Plaintiffs sought declaratory (id. ¶¶ 9–11) and injunctive relief (id. ¶ 21).

On April 1, 2013, Defendants filed a Motion to Dismiss.  (Dkt. # 22.)

On April 19, 2013, Plaintiffs filed a Response in Opposition to Defendants'

Motion.  (Dkt. # 29.)  This Court entered an Order granting Defendants' Motion to

Dismiss.  (Dkt. # 31 ("Order").)

Plaintiffs filed the instant Motion for New Trial after the Court issued

its Order.  (Dkt. # 33.)  Defendants responded (Dkt. # 36) and also moved for

sanctions against Plaintiffs for filing the Motion for New Trial (Dkt. # 37).

Plaintiffs filed a Response to Defendants' Motion for Sanctions (Dkt. # 39), and

Defendants filed a Reply (Dkt. # 40).  Prior to the hearing, Plaintiffs filed an

Advisory to the Court regarding recent Fifth Circuit case law.  (Dkt. # 42).

Defendants filed a Response.  (Dkt. # 43.)

DISCUSSION

I.     <u>Motion for New Trial (Motion to Amend Judgment)</u>

        Plaintiffs' Motion for New Trial seeks relief under Federal Rules of

Civil Procedure 59(e) and Rule 59(a)(1)(b).[2]  (Dkt. # 33 at 1.)  Plaintiffs may seek

an amendment of this Court's Order granting Defendants' Motion to Dismiss by

filing a motion to alter or amend the Court's judgment under Rule 59(e).  Rule

59(e) permits a movant to challenge a judgment that has been granted in the

absence of a trial.  In effect, Rule 59(e) allows a court to reconsider its prior

judgment.

        Rule 59(e) motions "serve the narrow purpose of allowing a party 'to

correct manifest errors of law or fact or to present newly discovered evidence.'"

<u>Waltman v. Int'l Paper Co.</u>, 875 F.2d 468, 473 (5th Cir. 1989) (quoting <u>Keene

Corp. v. Int'l Fidelity Ins. Co.</u>, 561 F. Supp. 656, 665 (N.D. Ill. 1982)).  A motion

---

[2]        Rule 59(a)(1)(b), however, only applies "after a non-jury trial."  Fed.
R. Civ. P. 59(a)(1)(b).  The Court dismissed Plaintiffs' claims on a Motion to
Dismiss; a trial did not take place.

5

to alter or amend the judgment "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Templet v. HydroChem Inc., 367 F.3d 473, 478–79 (5th Cir. 2004) (citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)).

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." Id. at 479. As such, there are only three grounds for amending a judgment under Rule 59(e): (1) to correct a manifest error of law or fact; (2) to account for newly discovered evidence; and/or (3) to accommodate an intervening change in controlling law. Schiller v. Physicians Resource Grp., Inc., 342 F.3d 563, 567 (5th Cir. 2003); see also Homoki v. Conversion Servs., Inc., 717 F.3d 388, 404 (5th Cir. 2013) ("A motion to amend judgment under Fed. R. Civ. P. 59(e) 'must clearly establish either manifest error of law or fact or must present newly discovered evidence and cannot raise issues that could and should have been made before the judgment issued.'" (quoting Advocare Int'l, LP v. Horizon Lab., Inc., 524 F.3d 679, 691 (5th Cir. 2008))). In applying these three grounds, a district court has "considerable discretion" to decide whether to reopen a case. Templet, 367 F.3d at 479.

Plaintiffs' instant Motion for New Trial relies on the first ground for relief because they seek to correct manifest errors of law. (Dkt. # 33 at 1–2 ¶ 1, 6 ¶ 4.) As a preliminary matter, the Court notes that Plaintiffs' arguments in the

Motion for New Trial are incredibly difficult to follow.  In fact, at some times it appears as though Plaintiffs are referring to a different order than the one this Court filed.  For example, Plaintiffs allege that "this Court relies on the decisions in <u>Marsh</u>, <u>Kan</u>, and <u>Eskridge</u> as authority for arguing that the note and deed of trust are severable when it comes to foreclosure."  (<u>Id.</u> at 14 ¶ 13.)  However, the Court's Order never referred to "<u>Kan</u>" or "<u>Eskridge</u>."  Furthermore, this Court's Order did not refer to a "<u>Marsh</u>" case when discussing whether possession of the Note was needed in order to enforce the Deed of Trust.  (<u>See</u> Order at 7–12.)  The only two references to a "<u>Marsh</u>" case are found in the Texas Civil Practice and Remedies Code § 12.002 discussion by way of a quoting parenthetical (<u>see</u> Order at 23 ("<u>Saucedo</u>, 2013 WL 656240, at *5 (quoting <u>Marsh v. JPMorgan Chase Bank, N.A.</u>, 888 F. Supp. 2d 805, 813 (W.D. Tex. 2012)))"), and in the Injunctive and Declaratory Relief section (<u>see</u> Order at 27 ("Thus, in the absence of a live substantive claim, Plaintiffs' request for declaratory judgment must be dismissed. <u>See, e.g.</u>, <u>Marsh</u> 2012 WL 3756276, at *9.")).

Plaintiffs also state that "[t]he Court's argument that the fraudulent assignment does not create a lien or claim on title [for purposes of Texas Civil Practice and Remedies Code § 12.002] is simply incorrect."  (Dkt. # 33 at 10 ¶ 9.)  Plaintiffs argue that under Texas law an assignment constitutes a property interest for purposes of § 12.002.  (<u>Id.</u> at 10–11 ¶ 9.)  But this Court's Order <u>agreed</u> with

7

Plaintiffs that a mortgage assignment constitutes a "lien or claim" on property. The Order specifically found that an "assignment of a deed of trust creates a claim to an interest in real property." (Order at 24.) The Court only dismissed Plaintiffs' claim under § 12.002 because "Plaintiffs did not plausibly allege sufficient facts to indicate that Defendants made, presented, or used a <u>fraudulent</u> document"—a requirement under § 12.002(a)(1). (<u>Id.</u> (emphasis added)) Plaintiffs' claim was not dismissed because the assignment did not create a claim on title. (<u>See id.</u> at 22–24.)

Moreover, Plaintiffs' Motion for New Trial restates previous arguments. For example, the beginning portion of Plaintiffs' standing argument is a verbatim repetition of Plaintiffs' standing argument in Plaintiffs' Response to Defendants' Motion to Dismiss. (<u>Compare</u> Dkt. # 29 at 6–8 ¶ 14, <u>with</u> Dkt. # 33 at 6–7 ¶ 5.) Plaintiffs also repeat the same argument they used in a prior brief regarding whether the fraudulent assignment creates a lien. (<u>Compare</u> Dkt. # 29 at 17 ¶ 25, <u>with</u> Dkt. # 33 at 10–11 ¶ 9.)

Despite Plaintiffs' unclear briefing, the Court will consider each of Plaintiffs' arguments in their Motion for New Trial that are relevant to this Court's Order and have not been repeated.

A.   <u>Using the Rule 9(b) Standard instead of the Rule 8 Pleadings</u>
<u>Standard</u>

Plaintiffs first argue that the Court erred by imposing "the 9(b) standard on the Plaintiffs' pleadings instead of the Rule 8 pleadings standard." (Dkt. # 33 at 2 ¶ 1(A).)  Presumably, Plaintiffs refer to the Court's discussion regarding the third element of a quiet title action, where the Court held that Plaintiffs did not state a claim that the assignment of the Deed of Trust was fraudulent or forged.  (<u>See</u> Order at 21.)  The Court held that Plaintiffs "fail[ed] to allege with sufficient particularity the circumstances constituting the alleged fraud as required by Federal Rule of Civil Procedure 9(b)."  (<u>Id.</u>)  Plaintiffs did not satisfy this heightened pleading standard because Plaintiffs' Second Amended Complaint did not allege any facts regarding the "who, what, when, where and how" of the alleged fraud.  (<u>Id.</u> at 22 (quoting <u>U.S. ex rel. Willard v. Humana</u> <u>Health Plan of Tex., Inc.</u>, 336 F.3d 375, 384 (5th Cir. 2003)).)

Applying Rule 9(b) to Plaintiffs' allegations of fraud and forgery was proper.  This is true even though Plaintiffs did not state an individual cause of action for fraud.  <u>See</u> <u>Lone Star Ladies Inv. Club v. Schlotzsky's Inc.</u>, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").  Determining whether Plaintiffs have plausibly stated a claim that the assignment was fraudulent plainly

9

requires applying Rule 9(b).  See, e.g., Thomas v. Bank of N.Y. Mellon,

3:12-CV-4941-M-BH, 2013 WL 4441568, at *8 (N.D. Tex. Aug. 20, 2013)

(applying Rule 9(b) to the plaintiffs' claims that the assignment was fraudulent).

   Applying Rule 9(b) to Plaintiffs' allegations of forgery was similarly

proper.  The Texas Penal Code provides that a "person commits [a forgery] if he

forges a writing with intent to defraud or harm another."  Tex. Penal Code

§ 32.21(b) (emphasis added).  Because § 32.21(b) requires "intent to defraud," a

reviewing court must use Rule 9(b) to evaluate a plaintiff's forgery claim.  See The

Arc of The Pikes Peak Region v. Nat'l Mentor Holdings, Inc., No.

10-cv-01144-REB-BNB, 2011 WL 1047081, at *3 (D. Colo. Mar. 18, 2011)

(holding that a claim of forgery under Colorado law sounds in fraud because it

requires intent to deceive; thus the forgery claim was subject to Rule 9(b)

particularity requirement).  Moreover, courts have routinely applied Rule 9(b) to

forgery claims.  See, e.g., Tucci v. Smoothie King Franchises, Inc., 215 F. Supp.

2d 1295, 1302 (M.D. Fla. 2002) (holding that the complaint did not satisfy Rule

9(b) where there were no facts alleged to support that the defendant knew that a

signature on an agreement had been forged or that the defendant had anything to

do with the alleged forgery).

   Plaintiffs also argue that the "Court erroneously urges that Plaintiff

must have every piece of evidence fully investigated prior to filing a suit."  (Dkt.

# 33 at 2 ¶ 1(A).)  However, as explained by the Fifth Circuit, courts apply Rule 9(b) "[i]n cases of fraud" because "Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later."  U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009).  "Courts are instructed to apply Rule 9(b) to fraud complaints with 'bite' and 'without apology.'"  Id. (quoting Williams v. WMX Tech., Inc., 112 F.3d 175, 178 (5th Cir. 1997)).  Although the Court did not require "every piece of evidence" as Plaintiffs contend, the Court did require the "who, what, when, where, and how" of the alleged fraud as required by the Fifth Circuit.  Willard, 336 F.3d at 384.  In other words, Plaintiffs were required—before filing their claims of fraud—to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 362 (5th Cir. 2004) (emphasis added) (quoting Williams, 112 F.3d at 177–78).  Plaintiffs failed to meet the Rule 9(b) standard as "Plaintiffs [did] not allege any facts indicating who, precisely, was defrauded or who the alleged misrepresentation . . . ."  (Order at 22.)  Thus, the Court properly dismissed Plaintiffs' allegations of fraud.

Plaintiffs additionally argue:

> So . . . long as the bank can understand [why] we are suing them
> because we assert they are not the legal holder of the note and that we

11

> are alleging that the Plaintiffs' agent forged or 'ghost wrote' the
> assignment and then filed it, and that those allegations state a claim
> then we state a claim that should not be dismissed.

(Dkt. # 33 at 2 ¶ 1(A).)  But Plaintiffs' argument confuses the notice pleading standard under Rule 8(a) with the heighted pleading standard for averments of fraud under Rule 9(b).  It is true that Rule 9(b) supplements, but does not supplant Rule 8(a)'s notice pleading standard.  Kanneganti, 565 F.3d at 186.  However, it is also true that Rule 9(b) only requires a "simple, concise, and direct" allegation of the circumstances constituting the fraud.  Id.  "[M]erely ensuring notice" to Defendants, as Plaintiffs assert, "is not enough for Rule 9(b)."  Ind. Bell Telephone Co. Inc. v. Lovelady, No. SA-05-CA-285-RF, 2006 WL 485305, at *2 (W.D. Tex. Jan. 11, 2006).

In sum, the Court properly applied Rule 9(b) to Plaintiffs' averments of fraud and forgery, and as identified in the Court's Order, Plaintiffs' Second Amended Complaint does not sufficiently allege facts corroborating either the fraud or forgery allegations to satisfy the heightened pleading requirements of Rule 9(b).

### B.    Election of Remedies

Plaintiffs next argue that the Court has "fallen for the election of remedies argument" and the Court "ignores over 100 years of Texas law in reaching this decision."  (Dkt. # 33 at 4 ¶ 1(B).)  Plaintiffs maintain, "It is not true

12

that the bank does not have to be the holder of the note in order to enforce the deed of trust." (Id.)  According to Plaintiffs, "there is not one Texas case that stands for the proposition that you do not have to be the holder of the note in order to enforced [sic] the deed of trust." (Id.)

The Court initially notes that Plaintiffs' arguments are largely moot because Defendants submitted the Note with the assignment to the Court (Dkt. # 22, Ex. 1), and at the hearing on the Motion to Dismiss, Plaintiffs acknowledged that Defendants hold the Note. (See Order at 10–11.)  Moreover, as the Court's Order explained, Texas law makes clear that the right to recover on the promissory note and foreclose on the deed of trust may be undertaken in independent actions. (See Order at 8 (citing Aguero v. Ramirez, 70 S.W.3d 372, 374 (Tex. App. 2002)). A mortgagee may elect to foreclose solely under a power of sale conferred by a deed of trust.  (See id. at 8 (citing Tex. Prop. Code §§ 51.002, 51.0025).)  A "mortgagee" is defined by the Texas Property Code as "the last person to whom the security interest has been assigned of record."  (See id. at 9 (citing Tex. Prop. Code § 51.004(4)).)  The Court's Order concluded that "the Assignment of the Deed of Trust from New Century to Deutsche Bank, if properly recorded, authorizes Defendant Deutsche Bank to foreclose on the Property as mortgagee, regardless of whether Defendants hold the note or not." (Id. at 9–10.)

This principle has recently been affirmed by the Fifth Circuit in

Martins v. BAC Home Loans Serv., L.P., 722 F.3d 249, 254–55 (5th Cir. 2013).  In

Martins, the Fifth Circuit discussed whether a mortgage servicer may administer a

foreclosure on behalf of a mortgagee without holding the promissory note.  Id.

The court held that "[t]he party to foreclose need not possess the note itself."  Id. at

255; see also id. ("Courts in Texas have repeatedly recognized that Texas law

allows either a mortgagee or a mortgage servicer to administer a deed of trust

foreclosure without production of the original note." (quoting Van Hauen v. Wells

Fargo Bank, N.A., No. 4:12-CV-344, 2012 WL 4162138, at *5 (E.D. Tex. Aug. 24,

2012) (recommendation of magistrate judge), adopted, 2012 WL 4322518 (E.D.

Tex. Sept. 20, 2012))).

          Another Fifth Circuit panel recently held that possession of the

promissory note is not required to foreclose because any transfer of the security

interest (i.e., the deed of trust) presumptively includes the transfer of the note.

Reinagel v. Deutsche Bank Nat'l. Trust. Co., 722 F.3d 700, 705–06 (5th Cir.

2013).  The court in Reinagel first found that Texas courts tend to follow the

Restatement.  Id. at 706 (citing Conversion Props., LLC v. Kessler, 994 S.W.2d

810, 813 (Tex. App. 1999)).  The court then observed that under the Restatement

(Third) of Property: Mortgages, the transfer of a mortgage presumptively includes

the note secured by the mortgage, whether or not the instrument assigning the deed

14

of trust expressly references the note.  <u>Id.</u> at 706.  Thus, the court held, under the

<u>Restatement</u>'s approach, an assignment of the deed of trust (because it

presumptively includes the note) is sufficient to give the bank authority to

foreclose.  <u>Id.</u>

   In light of the recent Fifth Circuit opinions holding that Texas law

does not require the production of a promissory note to institute a non-judicial

foreclosure, the Court accurately held that Plaintiffs need not be the "holder" of the

Note to foreclose on the Property.

   C. <u>Fraudulent Assignment of the Note</u>

   Plaintiffs next contend that even though Defendants proffered the

Note, the assignment of the Note was fraudulent and illegal and, therefore, void.

(Dkt. # 33 at 5–10 ¶¶ 1(D)–8.)  This is a slightly different theory than was

discussed in the Court's Order.  (<u>See</u> Order at 12–16 (addressing Plaintiffs' claims

that the assignment of the <u>Deed of Trust</u> was fraudulent and invalid).)

   However, Defendants submit that they seek to enforce the Deed of

Trust, not the Note.  (<u>See</u> Dkt. # 22 at 12.)  As discussed above, only a deed of

trust is necessary for a mortgagee to institute a non-judicial foreclosure.  Because a

mortgagee is not required to produce the note to foreclose on the deed of trust,

Plaintiffs' challenges to the validity of the assignment of the Note are moot.

Nevertheless, the Court will address each of Plaintiffs' arguments regarding the assignment of the Note.

      1.    <u>Standing</u>

Whether Plaintiffs can challenge the assignment of the Note depends on whether Plaintiffs have standing to make such a challenge. Although much of the standing analysis for the assignment of the Note mirrors the Court's Order addressing whether Plaintiffs had standing to challenge the assignment of the Deed of Trust (<u>see</u> Order at 12–16), the Court will nevertheless separately discuss whether Plaintiffs have standing to challenge the assignment of the Note.

This Court's Order previously held that a plaintiff-borrower has standing to challenge an assignment on any ground that renders the assignment void or invalid—rather than voidable. (<u>See</u> Order at 13.) In <u>Reinagel</u>, the Fifth Circuit affirmed this principle. 722 F.3d at 705. The court directly addressed whether a plaintiff has standing to challenge the validity of an assignment of the deed of trust and corresponding promissory note. <u>Id.</u> The court first observed that "Texas courts have held that a non-party to a contract cannot enforce the contract unless she is an intended third-party beneficiary." <u>Id.</u> (citing <u>S. Tex. Water. Auth. v. Lomas</u>, 223 S.W.3d 304, 306 (Tex. 2007)). But the plaintiffs in <u>Reinagel</u> were not attempting to enforce the terms of the contract, but rather were arguing that the assignment was <u>void ab initio</u>. <u>Id.</u> The court concluded:

> Though "the law is settled" in Texas that an obligor cannot defend
> against an assignee's efforts to enforce the obligation on a ground that
> merely renders the assignment voidable at the election of the assignor,
> Texas courts follow the majority rule that the obligor may defend "on
> any ground which renders the assignment void."  A contrary rule
> would lead to the odd result that Deutsche Bank could foreclose on
> the Reinagels' property though it is not a valid party to the deed of
> trust or promissory note, which, by Deutsche Bank's reasoning,
> should mean that it lacks "standing" to foreclose.

Id.

Thus, as Reinagel confirmed, Plaintiffs' standing is predicated on

whether Plaintiffs' challenge to the assignment renders the Note void or voidable.

After examining Plaintiffs' Second Amended Complaint, the Court is not

convinced that Plaintiffs challenged the assignment of the Note.  Although

Plaintiffs' Motion for New Trial argues that Defendants' physical possession of the

Note is insufficient to foreclose because there was an "illegal transfer of the note,"

(Dkt. # 33 at 5), the Court is unable to decipher what challenges Plaintiffs made in

their Second Amended Complaint with regard to the Note.  Plaintiffs' Second

Amended Complaint did discuss why the assignment of the Deed of Trust is

allegedly invalid, but did not address the assignment of the Note.  (See SAC at 3

¶ 5).  The only reference to the assignment of the Note in Plaintiffs' Second

Amended Complaint provided: "As stated above [referring to the Deed of Trust

discussion], because the Defendant is not the proper holder and owner of the notes

or assignee of the deed of trust or the servicer acting on behalf of the holder,

17

Defendants do not have standing to foreclose." (Id. ¶ 6.) This passing reference is insufficient to challenge the assignment of the Note because the Court is unsure what challenge is being made.

Accordingly, the Court is unable to determine whether any such challenge would render the Note void or voidable. In the absence of any challenge in the Second Amended Complaint, the Court finds that Plaintiffs lack standing to contest the validity of the assignment of the Note.

### 2.   Proper Assignment

In any case, the face of the Note does not suggest that an assignment would be improper because the Note is endorsed in blank. (See Dkt. # 22, Ex. 1 at 5.) Under Texas law, physical possession of a promissory note that bears a blank endorsement establishes ownership and the right to collect. See Tex. Bus. & Com. Code § 3.205(b) ("When [e]ndorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially [e]ndorsed."); Kiggundu v. Mortg. Elec. Registration Sys. Inc., 469 F. App'x 330, 331–32 (5th Cir. 2012) ("Because the note was endorsed in blank and the Bank of New York was in possession of the note, under Texas law, the Bank of New York was entitled to collect on it."), cert. denied, 133 S. Ct. 210 (2012).

A challenge could be entertained concerning a blank endorsement if the endorsement itself was not valid. See Green v. JPMorgan Chase Bank, N.A.,

-- F. Supp. 2d. --, No. 3-11-CV-1498-N, 2013 WL 1406012 (N.D. Tex. Apr. 8, 2013) (holding that the bank servicer is entitled to collect on the Note <u>only if</u> the lendor validly executed the endorsement).  As discussed <u>supra</u>, Plaintiffs' Second Amended Complaint did not allege that the assignment of the Note was invalidly executed, much less that the endorsement on the Note was invalid.

Plaintiffs still maintain that Defendants must affirmatively trace how they came into possession of the note.  (Dkt. # 33 at 9 ¶ 7.)  According to Plaintiffs, if there is a blank endorsement, the chain of possession must be proven. (<u>Id.</u>)  This is incorrect.  As the Court of Appeals of Texas has stated, "The UCC defines 'person entitled to enforce' an instrument as (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3.309 or 3.418(d)."  <u>Manley v.</u> <u>Wachovia Small Bus. Capital</u>, 349 S.W.3d 233 (Tex. App. 2011), <u>rev. denied</u>, (Mar. 9, 2012).  Texas law defines a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession. . . ."  Tex. Bus. & Com. Code § 1.201(b)(21)(A).  A person can become the holder of an instrument when the instrument is issued to that person or through negotiation.  <u>Id.</u> § 3.201 cmt. 1.  "[N]egotiation requires transfer of possession of the instrument and its [e]ndorsement by the holder."  <u>Id.</u>

§ 3.201(b). If an instrument is "payable to bearer" [i.e., it is endorsed in blank], "it may be negotiated by transfer alone." Id.

"Under Texas law, a holder of a note indorsed in blank is presumed to be entitled to enforcement of the instrument merely by showing possession of that instrument." Perdomo v. Fed. Nat. Mortg. Ass'n, 3:11-CV-734-M, 2013 WL 1123629, at *4 (N.D. Tex. Mar. 18, 2013) (citing Bittinger v. Wells Fargo Bank N.A., No. H-10-1745, 2011 WL 5415664, at *8 (S.D. Tex. Nov. 8, 2011)). "Such a holder is not also required to establish an unbroken chain of title." Id. (emphasis added) (citing Bittinger, 2011 WL 5415664, at *8 (distinguishing "holder" from "owner," the latter of which is required to show possession and complete chain of title)). Thus, Defendants are not required to show a chain of possession because Defendants, as holders, are presumed to be entitled to enforce the instrument by possession alone.

In sum, Plaintiffs failed to make any argument challenging the assignment of the Note in their Second Amended Complaint. Plaintiffs cannot contest the validity of the assignment of the Note on a Motion for New Trial. In any event, the Court finds that Defendants produced the Note, endorsed in blank, and are thus entitled to enforce it.

D.     Fraudulent Assignment Does Not Create a Lien

Plaintiffs next aver that they have pleaded sufficient facts to state a claim under Texas Civil Practice and Remedies Code § 12.002 by alleging that Defendants filed a fraudulent assignment with the Bexar County Clerk.  (Dkt. # 33 at 11–12 ¶ 9.)

Section 12.002 provides:

(a) A person may not make, present, or use a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
> (3) intent to cause another person to suffer:
> > (A) physical injury;
> > (B) financial injury; or
> > (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Remedies Code § 12.002.

Although the Court's Order held that an assignment of the Note <u>does</u> create a claim against real property, the Court found that Plaintiffs failed to state a claim under § 12.002 because "Plaintiffs have failed to plausibly allege facts indicating that Defendants made, presented, or used a fraudulent document."

(Order at 24.)  Thus, Plaintiffs failed to state a claim under § 12.002 because

Plaintiffs did not meet § 12.002(a)(1)'s requirement that Defendants had

"knowledge the document or other record is fraudulent."  (Id.)

Plaintiffs' only argument in their Motion for New Trial is that another

district court found that similar pleadings alleging fraud sufficed under Rule 9(b).

(Dkt. # 33 at 12 ¶ 9 (citing Wilborn v. AMS Serv. LLC, CA, No. 5:13-cv-001

(W.D. Tex. Feb. 12, 2013).)  However, a district court "is not bound by the

decisions of another district court."  Causey v. K & B, Inc., 670 F. Supp. 681, 689

(E.D. La. 1987).

Even assuming Plaintiffs' fraud theory sufficed under Rule 9(b),

Plaintiffs' § 12.002 claim should still be dismissed.  Plaintiffs' Second Amended

Complaint does not allege sufficient facts to show, or even suggest, that

Defendants acted with intent to cause Plaintiffs "physical injury, financial injury,

or mental anguish or emotional distress."  See Tex. Civ. Prac. & Rem. Code

§ 12.002(a)(3)(A)–(C).  Plaintiffs' Second Amended Complaint only states that

"the Defendants" violated Chapter 12 "with the intent to cause Plaintiff to suffer

(1) Financial Injury [and] (2) Mental Anguish or Emotional Distress."  (SAC at 8

¶ 16.)  These allegations, however, are conclusory and merely parrot back the

language of the statute.  Thus, they are insufficient to support a plausible claim for

relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (holding that to survive

a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

    E.    <u>Breach of Contract</u>

Plaintiffs next assert that Defendants materially breached the contract (thereby excusing Plaintiffs' performance) by refusing to accept Plaintiffs' tender of $4,500.  (Dkt. # 33 at 13 ¶ 11.)[3]  Presumably, Plaintiffs wish to proffer this "new evidence" to justify a motion for reconsideration under Rule 59(e).

Nevertheless, Plaintiffs' breach of contract claim should still be dismissed.  It is undisputed that Plaintiffs failed to make timely mortgage payments.  (Dkt. # 33 at 19 ¶ 17.)  As this Court's Order noted, the second element of a breach of contract claim requires that a plaintiff perform or tender performance.  (<u>See</u> Order at 25 (citing <u>Wright v. Christian & Smith</u>, 950 S.W.2d 411, 412 (Tex. App. 1997)).)  The Note describes the borrower's performance: "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to <u>pay immediately the full amount of Principal</u> that has not been paid and all the

---

[3]    Curiously, Plaintiffs' argument that Plaintiffs attempted to tender $4,500 mirrors other arguments (even the same dollar amount) brought by two other plaintiffs with current pending Motions for New Trial before this Court.  (<u>See</u> No. 5:12-cv-917, Dkt. # 23 at 14, 20 (alleging that Plaintiff Scott attempted to tender $4,500 to the bank); No. 5:12-cv-905, Dkt. # 30 at 13, 19 (alleging that Plaintiff Rodriguez attempted to tender $4,500 to the bank).)  At the hearing, Plaintiffs' counsel acknowledged that this was a "copying and pasting" error, but still could not identify which of the cases involved the $4,500 tender.

interest that I owe on that amount."  (Dkt. # 22, Ex. 1 at 4 (emphasis added).)  As

such, even assuming Plaintiffs did attempt to tender $4,500, the Court is unable to

hold that Plaintiffs can proceed on their breach of contract claim because Plaintiffs

still do not allege facts sufficient to demonstrate that the payments satisfied

Plaintiffs' obligations under the Note.  (See Order at 25.)

      In conclusion, Plaintiffs' arguments in his Motion for New Trial are

unavailing.  Plaintiffs' Second Amended Complaint was properly dismissed.

## II.   Motion for Sanctions

      Defendants move for sanctions pursuant to the "Court's inherent

authority" and 28 U.S.C. § 1927.  (Dkt. # 37.)  Defendants argue that Plaintiffs'

counsel acted in "bad faith" by filing the Motion for New Trial after "admit[ting]

on the record he had no reason to suspect that the assignment at issue was

procured as a result of forgery or fraud" and after admitting that he only filed the

lawsuit to stop the foreclosure.  (Id. at 3–4 ¶¶ 8–9.)  According to Defendants,

Plaintiffs' counsel's assertion that "another party has committed a criminal act

while knowing the accusation is baseless is beyond the pale and reveals

[Plaintiffs' counsel's] flagrant disregard for the function and purpose of the

courts."  (Id. at 4 ¶ 9.)

A.   <u>Inherent Authority to Impose Sanctions</u>

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," and that these powers "cannot be dispensed with in a Court, because they are necessary to the exercise of all others."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) (Scalia, J., dissenting) (quoting <u>United States v. Hudson</u>, 7 Cranch 32, 34 (1812)).  For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."  <u>Id.</u> (citing <u>Anderson v. Dunn</u>, 6 Wheat. 204, 227 (1821)).  As such, the Court has "inherent authority to impose sanctions 'in order to control the litigation before it.'"  <u>Positive Software Solutions, Inc. v. New Century Mortg. Corp.</u>, 619 F.3d 458, 460 (5th Cir. 2005) (quoting <u>NASCO, Inc. v. Calcasieu Television & Radio, Inc.</u>, 894 F.2d 696, 703 (5th Cir. 1990), <u>aff'd sub nom.</u> <u>Chambers</u>, 501 U.S. at 32.

Because these vested powers carry a certain "potency," courts are instructed to wield them with "restraint and discretion."  <u>Chambers</u>, 501 U.S. at 44.  "[I]n order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in 'bad faith.'"  <u>Elliott v. Tilton</u>, 64 F.3d 213, 217 (5th Cir. 1995).

B.    28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, a court may "sanction an attorney (as distinguished from a party) who unnecessarily multiplies proceedings by requiring him [or her] to pay the costs of litigation." F.D.I.C. v. Calhoun, 34 F.3d 1291, 1296 (5th Cir. 1994); see Matta v. May, 118 F.3d 410, 413–14 (5th Cir. 1997) (holding that monetary sanctions may be "imposed only on offending attorneys; clients may not be ordered to pay such awards").

Section 1927 states in full:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "Before a sanction under § 1927 is appropriate, the offending attorney's multiplication of the proceedings must be both 'unreasonable' and 'vexatious.'" F.D.I.C. v. Conner, 20 F.3d 1376, 1384 (5th Cir. 1994).  The Fifth Circuit has held that this standard requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998).

Even if the Court finds any of the foregoing evidence, the liability created under § 1927 is only for excessive costs due to persistent prosecution of a meritless claim.  Browning v. Kramer, 931 F.2d 340, 344 (5th Cir. 1991).

Punishment under § 1927 "may not shift the entire financial burden of an action's defense." Calhoun, 34 F.3d at 1297.

      C.  <u>Plaintiffs' Counsel Did Not Act in Bad Faith or Vexatiously Multiple the Proceedings</u>

      Though a close call, the Court is unable to conclude that Plaintiffs' counsel acted in "bad faith" or vexatiously multiplied the proceedings in pursuing this matter.  The transcript of the hearing reveals that Plaintiffs' counsel may have had some—though minimal—evidence.  Counsel asserted that the assignment of the Deed of Trust may be a forgery because it may be "from one of the document mills in Florida."  (No. 5:12-cv-00917, Dkt. # 28 at 11:1–2.)[4]

      However, when questioned by the Court, counsel admitted that he lacks at least some evidence of fraudulent conduct:

> THE COURT: Do you -- and, you know, [fraud is] a very serious allegation. Do you have any evidence that that's the case here?
>
> MR. GRUBBS: Not, not in these cases yet, your Honor.  We haven't hired the expert related to the handwriting yet, but we have in other cases, your Honor.

(<u>Id.</u> at 11:3–8.)   But then counsel reasserted that he does have evidence:

> THE COURT: And you make this allegation without any evidence at all.

---

[4]      Although this docket entry reveals that the transcript is from another case, the Court notes that the hearing on April 22, 2013 involved three separate cases, but all three cases involved Plaintiffs' counsel.

  MR. GRUBBS: No, your Honor.  We make it based on a robo-signing database.

  THE COURT: I said, do you have any evidence in this case that it happened and you acknowledged that you didn't.

  MR. GRUBBS: We don't, we don't have the handwriting results from our experts back yet, your Honor.

(<u>Id.</u> at 11:16–19.)  Counsel then admitted that he filed suit prior to receiving the handwriting results in order to stop the foreclosure.  (<u>Id.</u> at 12:2–3.)  The Court expressed sincere concern that counsel filed a complaint alleging fraud and forgery without <u>already</u> having some evidence that a fraud or forgery took place.

  Despite several of Plaintiffs' counsel's concessions at the hearing on Defendants' Motion to Dismiss, the Court finds that Plaintiffs' counsel did not go so far as to admit that he had no evidence to support his claims for fraud and forgery.  Rather, Plaintiffs' counsel relied on a theory that the document must have come from a "document mill" in Florida and averred that the assignment of the Deed of Trust was therefore fraudulent.  Although Plaintiffs' theories did not—and do not—state a claim for relief, this does not necessarily mean that Plaintiffs' counsel acted in bad faith or vexatiously multiplied the litigation.  When Plaintiffs filed their Motion for New Trial, the Fifth Circuit had not yet published an opinion rejecting Plaintiffs' theories.  As a result, the Court does not find that sanctions are warranted.

28

Nevertheless, the Court takes this opportunity to admonish Plaintiffs' counsel that he cannot continue to prosecute lawsuits that levy charges of fraud and forgery without evidence.  Plaintiffs' counsel is on notice that for future cases, <u>the Court will require evidence of fraud or forgery</u> and will not indulge future plaintiffs with speculative theories.  The continued filing of such complaints in direct contradiction of Fifth Circuit case law and the law of this Court would clearly be grounds for sanctions in the future.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for a New Trial (Dkt. # 33) and **DENIES** Defendants' Motion for Sanctions (Dkt. # 37).

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 31, 2013.

_____
David Alan Ezra
Senior United States Distict Judge